UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                              CASE No. 1:06-cr-227

                              HON. ROBERT J. JONKER

ORLANDO CEPADA EDWARDS,

    Defendant.

_____/

## OPINION

### INTRODUCTION

Defendant Edwards pleaded guilty to a Section 841(b)(1)(A)(iii) crack cocaine offense in March 2007.  In exchange for his guilty plea, the government dismissed two other drug counts and the Section 851 Supplemental Information that would have resulted in a statutorily mandated life sentence.  Defendant was sentenced as a career offender on August 6, 2007, to a term of 262 months imprisonment, followed by a five-year term of supervised release.  His term of custody was later reduced to 235 months.  According to the BOP website, his estimated release date is July 25, 2023.

The matter before the Court is Defendant's pro se motion for a sentence reduction.  (ECF No. 158).  The sentence reduction request implicates two provisions of the First Step Act.  The first—and the one cited by Defendant—is the Act's provision allowing incarcerated persons to file their own motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  A second provision, found in Section 404 of the First Step Act, makes the Fair Sentencing Act's statutory

changes for crack cocaine offenses retroactive to defendants, like Defendant Edwards, who were sentenced before August 3, 2010. Defendant Edwards did not reference this Section in his motion, however the Court brought it to the parties' attention after its own analysis indicated Defendant Edwards might be eligible for a reduction under Section 404. The Court appointed counsel to assist Defendant in his motion and ordered the government to respond.

On November 17, 2022, the Court stayed further consideration of the motion on Defendant's request while Defendant pursued medical treatment. (ECF No. 165). The most recent submission by defense counsel (ECF No. 168) now reflects that Defendant is ready for a decision. Accordingly, the Court lifts the stay and proceeds to a decision. For the reasons that follow, the Court denies the motion for compassionate release, but determines that Defendant is eligible for a sentence reduction under the retroactive crack cocaine provision and reduces Defendant's sentence to time served.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Defendant Edwards' Charge & Plea*

According to the Final Presentence Report (PSR), on September 8, 2006, Defendant Edwards' girlfriend contacted the Kalamazoo Department of Public Safety and reported that Defendant Edwards left a "large amount of powder cocaine" in her residence. (PSR ¶ 19, ECF No. 144, PageID.585). Officers with the Kalamazoo Valley Enforcement Team (KVET) responded to the residence and found the powder cocaine in a pillowcase that belonged to the daughter of Edwards' girlfriend. (*Id.*). Officers were told that Edwards, along with Alexis Bass, planned to cook the powder cocaine into crack cocaine and when they entered the residence a short time later, they found Edwards and Bass in the kitchen with drugs and drug paraphernalia. (PSR ¶¶ 20-23).

In total, officers seized 171.87 grams of crack cocaine and 26.55 grams of powder cocaine. (PSR ¶ 24).

Edwards and Bass were charged in a three-count indictment on September 27, 2006. (ECF No. 1). Count 1 charged Defendants Edwards and Bass with Conspiracy to Manufacture and Possess with Intent to Distribute fifty grams or more of crack cocaine; count 2 charged both defendants with manufacturing fifty grams or more of crack cocaine; and count 3 charged both defendants with possession with intent to distribute fifty grams or more of crack cocaine. At the time, the penalty provision for all three counts was found in 21 U.S.C. § 841(b)(1)(A)(iii) and provided for a mandatory minimum sentence of 10 years up to life imprisonment. The government had a Section 851 notice on file citing Defendant Edwards' two prior convictions for a felony drug offense (ECF No. 26). With the 851 notice on file, Defendant Edwards faced a mandatory statutory sentence of life imprisonment if convicted on any one of the three counts.

Defendant Edwards subsequently agreed to plead guilty to Count 3 of the Indictment. (ECF No. 52). In exchange for his plea and cooperation, the government agreed to dismiss the remaining two counts and the Section 851 notice. (ECF No. 52). The matter proceeded to sentencing.

### 2. *PSR & Sentencing*

The Final Presentence Report (PSR) prepared by the probation officer found that Defendant Edwards was responsible for 195.65 grams of crack cocaine. (PSR ¶ 39). At the time of sentencing, this quantity triggered an initial base offense level of 34. (PSR ¶ 52). After accounting for various sentencing enhancements and acceptance of responsibility, the total drug offense level was 36.[1] (PSR ¶ 59). Defendant's criminal history score was eight. (PSR ¶ 73). Ordinarily this score corresponds to Category IV and a guideline range of 262 to 327 months. The

---

[1] The PSR allotted a reduction of two offense levels for acceptance.

3

PSR determined, however, that Defendant Edwards qualified as a career offender because he committed the offense of conviction after sustaining two prior felony convictions, one for a controlled substance offense and the other for a crime of violence. (PSR ¶ 60). Defendant Edwards' Criminal History Category thus became VI and his guideline range was 324 to 405 months on the chart. (LO 36 CHC VI).[2]

Prior to sentencing, Defendant lodged several objections to his guidelines, including a challenge to his career offender status. At the August 3, 2007, sentencing hearing, the sentencing judge overruled Defendant's objections. Under the terms of the plea agreement, the government then moved for an additional offense level reduction for acceptance that reduced Defendant's total offense level to 35 for a guideline range of 292-365 months. In allocution, the defense argued for a variance that would lower Defendant's criminal history category. (Sentencing Tr. at 24, ECF No. 92, PageID.426). The government opposed the request for a variance noting, in part, paragraph 83 of the PSR. That paragraph contained information pertaining to pending charges Defendant Edwards faced in State Court for felony murder, arson of a dwelling house, conspiracy to commit arson, and being a habitual offender. (PSR ¶ 83).

In fashioning a sentence, the sentencing court cited the Section 3553 factors. Looking at Defendant's criminal history, the sentencing Court did find a basis to vary downward to Category V, which corresponded to a guideline range of 262 to 327 months. The Court made clear this was a variance, and not a departure. (Sentencing Tr. 38, ECF No. 92, PageID.440). The Court then sentenced Defendant Edwards to the bottom end of the guideline range that accounted for the

---

[2] Since the statutory maximum penalty for the offense of conviction was life imprisonment under Section 841(b)(1)(A)(iii), the guidelines called for an initial career offender offense level of 37, or level 35 after adjusting for acceptance of responsibility. This was below the offense level calculated under Section 2D1.1. The higher offense level accordingly prevailed. (PSR ¶ 60).

variance: 262 months imprisonment, followed by a five-year term of supervision. Judgment entered on August 6, 2007. (ECF No. 86).

### 3. *Post Sentencing Matters*

Defendant filed a Notice of Appeal. On August 15, 2007, while the appeal was pending, Defendant Edwards pleaded guilty in the pending State Court case referenced in the PSR. He was sentenced in State Court on September 17, 2007, to 25 to 40 years in prison for felony murder, and to two concurrent terms of 160 months to 20 years in prison for the arson and conspiracy charges. These sentences were ordered to run concurrent with the federal sentence. (ECF No. 161-1). Defendant unsuccessfully appealed these convictions to the Michigan Court of Appeals, and on February 24, 2009, the Michigan Supreme Court denied Defendant's application for leave to appeal the Michigan Court of Appeals' decision. *People v. Edwards*, No. 137801, 483 Mich. 896 (Feb. 24, 2009). Meanwhile, the government filed a motion to dismiss Defendant Edwards' appeal of his federal convictions in the Sixth Circuit based on the appeal waiver in Defendant's written plea agreement. And on May 1, 2008, the Sixth Circuit Court of Appeals granted the motion and dismissed the appeal. *United States v. Edwards*, No. 07-2004 (6th Cir. May 1, 2008).

Defendant also sought further relief in this Court. On March 31, 2008, Defendant Edwards filed a motion for a reduction of sentence under Guideline Amendments 706 and 711. The Court ordered the probation office to prepare a Sentence Modification Report (SMR). The resulting report applied the guideline amendments as well as the additional offense level reduction for acceptance at sentencing. It found that Defendant's total offense level under the drug guidelines was 33. This meant that the career offender offense level now was greater than the offense level under the drug guidelines. Accordingly, the career offender level (34 after acceptance) took precedence and became Defendant's total offense level. The SMR went on to incorporate the

variance in criminal history and came out to a guideline range of 235 to 293 months. The probation department recommended a modified sentence of 235 months. Both the government and the defense agreed to this recommendation (ECF Nos. 110 and 113), however the defense requested an additional reduction. Among other things, the defense argued that if Defendant Edwards were resentenced as of the date of the SMR, Defendant Edwards would no longer qualify as a career offender.

On April 18, 2011, the Court granted the reduction motion and reduced Defendant's sentence to 235 months imprisonment. The Court declined to provide for a further reduction, noting that Section 3582(c) did not provide for a full, plenary, resentencing. (ECF No. 117, PageID.514). Defendant appealed the Court's decision. On September 12, 2012, the Sixth Circuit Court of Appeals affirmed the Court's decision. *United States v. Edwards*, No. 11-1533 (6th Cir. Sept. 12, 2012).

Defendant Edwards then returned to this Court and filed a motion for a further reduction under Guideline Amendments 750 and 782. (ECF No. 133). Defendant Edwards was not eligible for a reduction, however, because he was a career offender. The Court denied the motion on February 2, 2016.

### 4. *The Fair Sentencing Act of 2010*

In the summer of 2010 Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger the mandatory minimums established in the Anti-Drug Abuse Act of 1986. *United States v. Blewett*, 746 F.3d 647, 649 (6th Cir. 2013) (en banc); *see also Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity

in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1).  The Fair Sentencing Act also increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2).  Today, therefore, in order to trigger the 10 years to life sentencing range of Section 841(b)(1)(A)(iii) that Defendant Edwards was convicted under, the offense must involve more than 280 grams of crack cocaine.

Those changes made by the Fair Sentencing Act, however, were not retroactive.  *Blewett*, 746 F.3d at 650.[3]  Because Defendant Edwards had been convicted and sentenced before the Fair Sentencing Act's enactment he was not, at that time, eligible for any relief.

   5. *The First Step Act of 2018*

On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law.  The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism."  *United States v. Simons*, 375 F.Supp.3d 379, 385 (E.D.N.Y. 2019).

Two specific provisions are relevant for Defendant Edwards' purposes.  First, the First Step Act permitted defendants to bring compassionate release motions in federal courts. Previously, motions for release could be filed by only the Bureau of Prisons.  *See* First Step Act § 603(b). Second, in Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August

---

[3] In *Dorsey v. United* States, 567 U.S. 260 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred.  Because Defendant Edwards was sentenced before August 3, 2010, *Dorsey* did not provide him with a pathway to any relief.

3, 2010.  *See* First Step Act § 404.  Accordingly, defendants who were convicted before August 3, 2010, of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence.  First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b), 132 Stat 5194 (2018).   Whether to reduce the sentence of an eligible defendant is left to the reviewing court's discretion.  *Id.* at § 404(c).  No reduction is required.

### 6. *Sentence Reduction Motion*

On March 5, 2021, Defendant Edwards filed the instant motion for compassionate release. (ECF No. 158).  The basis of the motion is the COVID-19 pandemic, and various health concerns that Defendant asserts renders him especially susceptible to contracting a severe case of the virus. On July 18, 2022, the Court ordered the government to respond to the compassionate release motion.  The Court also observed that Defendant may be eligible for a reduction in sentence under Section 404 of the First Step Act and ordered the government to address that issue as well.  (ECF No. 159).  The Court appointed counsel to assist Defendant in his motion.  (ECF No. 162).

The government has responded to the motion.   As to Defendant's request for compassionate release, the government contends that Defendant has failed to exhaust his administrative remedies.  As to a reduction under Section 404 of the First Step Act, the government agrees that Defendant is technically eligible for a reduced sentence, but it argues no reduction is warranted for several reasons.  (ECF No. 161).  Defendant, through counsel, filed a response on October 13, 2022.  (ECF No. 163).  The defense memorandum admits that Defendant had not requested compassionate release through his facility's warden.  This was, the defense said, because Defendant Edwards believed such a request would be futile.  Nonetheless, after communicating with counsel, the defense motion states that Defendant has sought a reduction from the warden.

8

At the time of the defense filing, the 30-day period for response had not yet elapsed.  The focus on the defense brief, however, was on a reduction under Section 404 of the First Step Act.

On November 17, 2022, the Court stayed further consideration of the sentence reduction motion after receiving a pro se letter from Defendant requesting a delay in proceedings while he pursued medical treatment in the Bureau of Prisons.  The Court ordered counsel for Defendant to alert the Court as soon as Defendant was ready for the Court to decide the issues.  (ECF No. 165).  Further submissions now indicate that Defendant would like a decision on his reduction motion.  Accordingly, the Court lifts the stay and proceeds to the motion.

## DISCUSSION

### 1. *Compassionate Release Motion*

Defendant Edwards moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act.

Under *United States v. Alam*, 930 F.3d 861 (6th Cir. 2020), the Court must first be satisfied that defendant has exhausted his compassionate relief request in the BOP.  If so, then under *United States v. Ruffin*, 978 F.3d 1000 (6th Cir. 2020), the Court must proceed with a "three-step inquiry."  *See United States v. McCall*, No. 21-3400, ___ F. 4th ___, 2022 WL 17843865, at *4 (6th Cir. Dec. 22, 2022) (en banc).  Under this approach, the Court must first determine whether the defendant has identified an extraordinary and compelling basis for relief.  Second, courts must "confirm that any sentence reduction 'is consistent with applicable policy statements issued by the Sentencing Commission.'"  *McCall*, 2022 WL 17843865, at *4 (quoting 18 U.S.C. § 3582(c)(1)(A)).  And third, "defendants must persuade the district judge to grant the motion after the court considers the § 3553(a) factors."  *Id.*

9

In *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020), the Sixth Circuit simplified this analysis by concluding that U.S.S.G. § 1B1.13 is not a policy statement that limits a court's consideration of a compassionate release motion. This eliminates the need for this Court to analyze a defendant's request for consistency with U.S.S.G. § 1B1.13. *See also United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021) (reaffirming *Jones's* holding that "§1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions."). "So in practice, a district court need only consider whether extraordinary and compelling reasons exist and whether the § 3553(a) factors support a sentence reduction." *Id.* In *McCall*, the Sixth Circuit held that "nonretroactive changes in sentencing law cannot be 'extraordinary and compelling reasons' that warrant" compassionate release under Section 3582(c)(1). *Id.* at *5.

It appears that Defendant initially believed that it would be futile for him to request compassionate release from his facility's warden. After the appointment of counsel, however, Defendant changed course and did request compassionate release from the warden. At the time of the defense filing, no response had been received, although the prescribed time for responding had not yet elapsed. The record since then does not reflect one way or the other whether Defendant has received any response. The Court need not determine whether this is enough to exhaust because even assuming Defendant exhausted his claim, the Court will not exercise its discretion to award compassionate release on the present record.

The COVID-19 pandemic creates challenges for all citizens, whether in custody or in the community. The Court is not persuaded that Defendant suffers any unusual risk or vulnerability. The Defendant is a middle-aged man in his early fifties. He reported during his presentence interview that he was 6 feet tall and weighed 235 pounds. He further reported he was in fair health.

10

He was on a low sodium, high fiber and high protein diet and reported some stomach and bowel related issues. In his motion, Defendant reports he previous contracted the COVID-19 virus. Records from defense counsel indicate that Defendant has recovered from the virus and is undergoing treatment for "simple chronic care." There is nothing of record that suggests the BOP is unable to manage Defendant's particular medical needs even during the COVID pandemic. To the contrary, in a recent submission Defendant reports he had a colonoscopy scheduled to explore a mass. The results of that scan (if any) are not a part of the record, but the very fact that Defendant was scheduled to receive a scan, and that Defendant sought a stay of this motion to pursue treatment, demonstrates that the BOP is capable of handling Defendant's medical needs. The Court sees nothing extraordinary or compelling that would justify compassionate release here. Accordingly, Defendant's request for compassionate release is **DENIED.**

### 2. *Relief Under Section 404 of the First Step Act*

The remaining matter is on the issue the Court raised in its July 18, 2022, Order to Respond: whether Defendant is entitled to relief under Section 404 of the First Step Act. For the reasons set out below, the Court concludes that Defendant Edwards is eligible for a reduced sentence and exercises its discretion to reduce Defendant Edwards' sentence to time served.

In an earlier Order, this Court set out a two-step process for evaluating First Step Act motions. *See United States v. Boulding*, 379 F.Supp.3d 646 (W.D. Mich. May 16, 2019). The first step is determining eligibility. In *Boulding* the Court concluded that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act." *Id.* at 651. As applied to that case, this determination meant that the quantity of narcotics (whether admitted, found by a jury, or found by a court) did not factor into the question of eligibility. That is true

11

here as well, but this case also presents issues relating to a defendant's career offender status and changes (or not) to the guideline range. Based on the Court's approach in *Boulding*, these questions do not affect the categorical eligibility determination. They simply inform the Court's discretionary call at the second step.

At the second step, a reviewing court evaluates the motion to determine whether it should exercise its discretion to reduce a defendant's sentence. This calls for a determination of the scope of the relief available. Here the Court previously determined, and reaffirms here, that the First Step Act does not provide for a plenary-resentencing. *Id.*; *see also United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (concluding the First Step Act does not provide for a plenary resentencing and that the defendant need not be present for a reduction in sentence); *United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019) (noting that under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment except for a narrow range of situations, including "to the extent otherwise expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B) and holding that "[t]he First Step Act permits the court to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing.").

But as the Court has also remarked, "unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it." *Boulding*, 379 F.Supp.3d at 653. This means, among other things, that career offenders like Defendant Edwards who did not previously receive relief under the

12

retroactive amendments may now be able to receive a reduced sentence, if the court exercises its discretion to do so.  At this point the Court considers whether to reduce a sentence by looking at the factors set out in Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct.  *Jones*, 2019 WL 248-113, at *2.

This was the Court's approach early on when the First Step Act was first enacted and when there was little case law that guided the process.  Since that time the Court of Appeals and the Supreme Court have provided further guidance.  For example, in *United States v. Boulding*, 960 F.3d 774 (6th Cir. 2020) the Sixth Circuit determined a defendant seeking relief under Section 404 is not entitled to a plenary resentencing, but the process "must include an accurate amended guideline calculation and renewed consideration of the 18 U.S.C. § 3553(a) factors[.]" *Id.* at 785. Moreover, "a defendant seeking to present objections must be afforded an opportunity to do so and the resentencing court must make considered judicial determinations on those objections." *Id.* And in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), the Supreme Court explained that "when deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." *Id.* at 2404.  In evaluating motions under Section 404, the Court went on to hold, the First Step Act permits "district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *Id.*[4] Consistent with this additional guidance, the Court proceeds to apply the above approach to Defendant Edwards.

---

[4] At first blush, there is some tension between *Concepcion*'s holding that district courts may consider "intervening changes of law or fact" in deciding whether to reduce an eligible Defendant's sentence under Section 404 of the First Step Act, and *McCall*'s holding that non-retroactive changes in sentencing law may not be considered in determining whether a defendant has identified an extraordinary and compelling basis for compassionate release.  *Concepcion* was

### A.     *Defendant Edwards is Eligible for a Reduced Sentence.*

At the first step, the Court concludes Defendant Edwards is eligible for consideration of a reduced sentence under the First Step Act. Defendant Edwards' offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Sections 841(b)(1)(A)(iii); and those penalties were "modified by section 2 . . . of the Fair Sentencing Act of 2010[.]" He was, accordingly, convicted of a "covered offense." The categorical limitations in Section 404(c) also do not apply to Defendant Edwards. His sentence was not "previously imposed or previously reduced in accordance" with the Fair Sentencing Act's amendments. And he has not previously moved to reduce his sentence under Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).[5]

### B.     *Scope of Relief*

#### i.     *Guideline Comparison*

At the second step, the Court considers the scope of relief available to Defendant and then proceeds to determine by how much, if any, it should reduce Defendant Edwards' sentence. The

---

referenced by several judges who dissented from *McCall's* holding. *See, e.g.*, *United States v. McCall*, ___ F.4th ___, 2022 WL 17843865, at *22 (6th Cir. Dec. 22, 2022) (Gibbons, J., dissenting) (arguing the holding in *McCall* failed "to fairly apply the scope and spirit on *Concepcion*"). The majority in *McCall* distinguished *Concepcion* on the basis that it concerned a separate provision of the First Step Act. To the extent it had any applicability, the majority found that *Concepcion* supported the government's position in *McCall* because *Concepcion* concerned what a district court may consider if a defendant already met a threshold requirement for a sentence modification. It did not touch on whether non-retroactive changes may be considered in that threshold determination. *See   United States v. McCall*, ___ F.4th ___, 2022 WL 17843865, at *11-*12 (6th Cir. Dec. 22, 2022) (majority decision).

[5] The government agrees that Defendant Edwards is eligible for relief under Section 404. (ECF No. 161, PageID.787). And, while noting that such instances are "hard to find," it further agrees that a Court may reduce a defendant's sentence under Section 404 on its own motion. (ECF No. 161, PageID.788).

Court begins with a guideline range comparison. The table below demonstrates the differences between the offense level calculation as to Count 3 as it existed when Defendant Edwards was originally sentenced in 2007 and the guidelines as they exist now, taking into account all intervening drug guideline amendments and the retroactive application of the Fair Sentencing Act.

| Counts 3 | Original Guidelines | Current Guidelines |
|---|---|---|
| **Base Offense Level**  *Responsible for 196.65 grams of crack cocaine* | Level 34 (§ 2D1.1(c)(3))  *At least 150 G but less than 500 G of Cocaine Base* | Level 28 (§ 2D1.1(c)(6))  *At least 196 G but less than 280 G of Cocaine Base* |
| **Adjustment for Role in Offense** | +2 levels (§ 3B1.1(c)) | +2 levels (§ 3B1.1(c)) |
| **Adjustment for Obstruction of Justice** | + 2 levels (§ 3C1.1)) | + 2 levels (§ 3C1.1)) |
| **Adjustments for Acceptance of Responsibility (after sentencing)** | -3 levels (§ 3E1.1(a) & (b)) | -3 levels (§ 3E1.1(a) & (b)) |
| **Total Drug Offense Level (After Acceptance)** | Level 35 | Level 29 |
| **Statutory Penalty** | 10 years to Life  *Section 841(b)(1)(A)(iii)* | 5 to 40 years  *Section 841(b)(1)(B)(iii)* |
| **Chapter Four Enhancement (After Acceptance)** | Level 34 (§ 4B1.1)  *Maximum Life Penalty* | Level 31 (§ 4B1.1(b)(2))  *Maximum 40-year penalty* |
| **Total Offense Level** | Level 35  *Drug Offense Level* | Level 31  *Career Offender Level* |
| **Criminal History Category** | Category VI  *Career Offender* | Category VI  *Career Offender* |
| **Guideline Range Before Consideration of Career Offender Status** | 235 to 293  (LO 35; CH IV)  *Eight Criminal History Points* | 121 to 151 months  (LO 29; CH IV)  *Eight Criminal History Points* |

| | | |
|---|---|---|
| **Guideline Range After Consideration of Career Offender Status** | 292 to 365 months (LO 35; CH VI) | 188 to 235 months (LO 31; CH VI) |
| **Guideline Range After Consideration of Career Offender Status and Variance** | 262 to 327 months (LO 35; CH V) | 168 to 210 months (LO 31, CH V) |

The above chart assumes that Defendant Edwards qualifies as a career offender. However, the government appears to concede that, if sentenced today, Defendant Edwards would not qualify as a career offender. In previous decisions, this Court has refrained from revisiting a defendant's career offender status, reasoning that to do so would wade into a plenary resentencing that is not contemplated by the First Step Act. *See United States v. Foreman*, No. 1:06-cr-30, 2019 WL 3050670, at *6-*7 (W.D. Mich. July 12, 2019); *affirmed* 958 F.3d 506 (6th Cir. 2020). Of course, consistent with *Concepcion*, the Court is free to vary from the career offender levels if the Court finds good reason to do so, as the sentencing judge originally did in this case.

### a. *Discretionary Decision in this Case*

The Court has considered the positions of both parties. The Court has also reviewed the original PSR, the earlier SMR, and the rest of the record. The Court elects to exercise its discretion to reduce Defendant Edwards' sentence under the First Step Act. In evaluating the extent of the reduction, the Court considers the guideline analysis of each side, as well as the factors set forth in § 3553(a). The original sentencing judge found a basis to vary below the career offender guidelines and sentence Defendant to the bottom end of a guideline range that reflected a Criminal History Category of V. All things considered, the Court is satisfied in this case that a modest reduction to time served is appropriate.

If sentenced today, there appears to be no dispute that Defendant Edwards would no longer qualify as a career offender, and that he would receive a sentence that is below that which he has

already served. This is not a plenary resentencing, but this consideration does factor into the Court's discretionary decision. Defendant Edwards has also taken some educational classes while in custody, reflecting some effort towards rehabilitation. The government opposes the request mainly because, it says, both at the original sentencing and at the earlier sentence modification proceeding, the Court did not have occasion to consider the State Court felony murder and arson charges of which Defendant has been convicted. The government argues the Court should take this observation into account when exercising its discretionary decision. But this argument only cuts so far given that Defendant would still not qualify as a career offender if sentenced today. It certainly does militate against too deep of a reduction, however a reduction to time served in practical terms means that Defendant will see a reduction of only a few months' time, and will be transferred to State custody to serve out any remaining time on his concurrent State Court sentences.

In weighing all these considerations, the Court finds that a reduced sentence to time served satisfies the Section 3553 factors and comports with the relief authorized by the First Step Act. *See United States v. Laguerre*, No. 5:02-cr-30098-3, 2019 WL 861417, at *3-*4 (W.D. Va. Feb. 22, 2019) (declining, under First Step Act, to reduce a sentence to less than time served because the need to protect the public and for deterrence directs that a defendant not be allowed to "bank time."). Moreover, the Court will further order that this decision take effect ten days from the date of this Opinion to permit the Bureau of Prisons to complete certain administrative requirements, if necessary. All other terms of the original sentence, including the five years of supervised release, remain unchanged. This sentence reflects the purposes of sentencing, including the seriousness of the offense, deterrence to others, protecting the public, respect for the law, and providing rehabilitative opportunities

**CONCLUSION**

Defendant Edwards' pro se motion for compassionate release is denied.  (ECF No. 158). The Court, on its own motion, reduces Defendant Edward's term of custody to time served.  All other terms of the sentence, including the five years of supervised release, remain unchanged.

A separate Order consistent with this Opinion shall issue.


Dated:  January 9, 2023                           /s/ Robert J. Jonker
                                                  ROBERT J. JONKER
                                                  UNITED STATES DISTRICT JUDGE